ROSE et al. v. NEW YORK TELEPHONE CO.

(Supreme Court, Appellate Term, First Department.   June 5, 1914.)

1. TELEGRAPHS AND TELEPHONES (§ 33*)—OPERATION—DISCONTINUANCE OF SERVICE.

Where a telephone company, through mistake, failed to credit a subscriber with a payment, or to correct such mistake after it was called to its attention, and discontinued the service, its refusal to restore the service for 11 days after the subscriber had conclusively shown that the discontinuance was unwarranted was an act of bad faith, whether it resulted from spite or from reckless obstinacy.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 21; Dec. Dig. § 33.*]

2. TELEGRAPHS AND TELEPHONES (§ 28*) — OPERATION — DISCRIMINATION — STATUTORY PROVISIONS.

Transportation Corporations Law (Consol. Laws, c. 63) § 103, requiring a telephone company to receive dispatches from and for any individual and to transmit them with impartiality and good faith, under a penalty, prohibits the discontinuance in bad faith of a subscriber's telephone service, since the statute, although to be strictly construed as a penal statute, must be so construed as to have some meaning, and a literal reading of the word "dispatch" makes the section meaningless.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 16, 17; Dec. Dig. § 28.*]

Guy, J., dissenting.

Appeal from Municipal Court, Borough of Manhattan, Second District.

Action by Fanny Rose and another against the New York Telephone Company to recover the amount of a statutory penalty.  Judgment for plaintiffs, and defendant appeals.  Affirmed.

Argued May term, 1914, before GUY, BIJUR, and PENDLETON, JJ.

Arnold W. Sherman, of New York City, for appellant.

Sackler & Lavitt, of New York City (Abraham Simonoff, of New York City, of counsel), for respondents.

BIJUR, J.  [1] It is quite true that the failure to credit plaintiff with the amount of his July check may have been due only to an oversight or bookkeeping error, although the testimony on that point might warrant a finding of bad faith; but, whatever it was, it was rectified as the result of a visit of the plaintiff on August 5th.  The discontinuance of the service on August 25th may have been the result of a second error, namely, failure to note the correction of the first error.  But from August 25th until September 2d plaintiff so diligently and so conclusively and overwhelmingly demonstrated to any number of persons in authority in defendant's business that the discontinuance of service was utterly unwarranted that no other conclusion seems to me to be possible than that defendant's conduct in discontinuing the service for the 11 days complained of was in bad faith.  Whether it was the result of deliberate spite or of reckless obstinacy calculated to injure the plaintiff is quite indifferent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

[2] Defendant also urges that section 103 of the Transportation Corporations Law, upon the authority of which this penalty was recovered, refers only to telephones in pay stations, and also that it does not relate to the interruption of the use of the telephone for conversation, but only to the transmission of "dispatches." For the latter claim there is, of course, some basis in the language of the statute, which evidently has not been sufficiently altered during the course of its frequent amendment to accord fully with modern conditions in the telephone business. But I think that that interpretation of the law is wrong, because, while it claims to be based on the doctrine that the law is penal and should be strictly construed, it violates the fundamental doctrine that the law must be construed to have a meaning, and the transmission of "dispatches" over a telephone is meaningless, if literally read. It is true that a similar statute was so construed in Pollard v. M. & K. Telephone Co., 114 Mo. App. 533, 90 S. W. 121, but I do not find that that case has ever been followed.

In Matter of Baldwinsville Telephone Co., 24 Misc. Rep. 221, 53 N. Y. Supp. 574, it is pointed out by Hiscock, J., that the duty is simply to receive and transmit messages from a general office, but he adds:

"It seemed to be assumed by the defendant upon the argument that the statute contemplated receiving and transmitting messages through a telephone so placed (namely, as desired by the customer), and that a refusal to make such connections amounted to a failure to receive and transmit messages as required."

In Saltzburg v. Utica Home Telephone Co., 159 App. Div. 51, 144 N. Y. Supp. 309, Kruse, J., writing for the Appellate Division in the Third Department, indicates a doubt whether the removal of a telephone from a subscriber's premises is covered by the language of the statute.

Again, in Kevand v. N. Y. Telephone Co., 159 App. Div. 628, at page 631, 145 N. Y. Supp. 414, at page 416 (Appellate Division in the same department), the opinion by Merrell, J., calls attention to the use of the word "dispatches" and expresses the view that the Legislature "had no intention to make it applicable to a refusal on the part of a company to permit a patron to talk over a telephone." The decision, however, is based on the fact that neither discrimination nor bad faith was proved. Of the four judges then sitting, two concurred in the result only, and Kruse, P. J., dissented, saying that the fact disclosed in the case, i. e., the refusal of the defendant to give the plaintiff, over his *private* telephone, *connection* with other subscribers, came within the inhibition of the statute.

The judgment should be affirmed, with costs.

PENDLETON, J., concurs.

GUY, J. (dissenting). The defendant appeals from a judgment in favor of plaintiffs for the amount of a penalty alleged to have been incurred through defendant's violation of section 103 of the Transportation Corporations Law (Laws of 1909, c. 219 [Consol. Laws, c. 63]), which provides that:

"Every such corporation shall receive dispatches from and for other telegraph or telephone lines or corporations, and from and for any individual, and on payment of the usual charges by individuals for transmitting dispatches as established by the rules and regulations of such corporation, transmit the same with impartiality and good faith and in the order in which they are received, and if it neglects or refuses so to do, it shall pay one hundred dollars for every such refusal or neglect to the person or persons sending or desiring to send any such dispatch and entitled to have the same so transmitted. * * * "

The evidence shows that plaintiffs had previously entered into an agreement with defendant for telephone service at their place of business at the monthly rate of $4; that they had mailed to defendant checks in payment of the rates for the months of July and August, 1913, which checks had been retained and used by defendant, but, through the negligence or carelessness of defendant's clerks, had not been credited to plaintiffs; that on August 25, 1913, defendant cut off plaintiffs' telephone connection and refused to receive further messages from plaintiffs, stating as a reason therefor that plaintiffs had not paid their July bill; that plaintiffs' representative thereupon called upon the manager of defendant and showed him the canceled check for said payment; that defendant's superintendent then promised to fix it up; that the following day plaintiffs were again refused service; that plaintiffs' representative again called at defendant's office, spoke to defendant's manager, displayed the canceled checks given in payment for the bills of July and August, and defendant's bookkeeper then promised to see that plaintiffs were properly credited with the amount; that nothing was then done, however, to restore plaintiffs' telephone service, and plaintiffs were deprived of the use of the telephone until September 5, 1913.

While the neglect and refusal of defendant to furnish telephone service to plaintiffs might perhaps furnish the basis of an action for breach of contract, it does not constitute a cause of action for the recovery of a penalty, inasmuch as there is no evidence of bad faith. The purpose of the statute is to prevent intentional discrimination on the part of telephone or telegraph companies in the manner of rendering service, and not to impose liability for mere cases of negligence on the part of their employés. While this construction of the statute would seem to practically nullify the statute, because of the difficulty of establishing bad faith on the part of a corporation, it is supported by an unbroken line of authorities. In Kevand v. New York Telephone Co., 159 App. Div. 628, 145 N. Y. Supp. 414, the learned court (Appellate Division, Fourth Department, November Term, 1913) in construing this section of the statute say:

"The learned trial court submitted the case to the jury upon the sole question as to whether or not the evidence given upon the trial indicated bad faith on the part of the defendant company, and I believe the court in this respect correctly charged the jury when he said: 'For, as I said before, notwithstanding the service may have been discontinued without right, if the defendant honestly believed that it had the right to discontinue that service, then there can be no recovery, because in that event there would be good faith on the part of the defendant, *and it is only where there is absence of good faith, where bad faith exists, and bad faith calls for the action that is taken and prompts that action, and it is only then that the penalty declared by statute*

*is recoverable of the defendant.* \* \* \* Plaintiff must show to your satisfaction that he had a right to that service and that the defendant denied him that service in bad faith, and not because it believed it had a right to discontinue the service.'"

See, also, Wichelman v. W. U. Telegraph Co., 30 Misc. Rep. 450, 62 N. Y. Supp. 491; Meyers v. W. U. Telegraph Co., 82 Misc. Rep. 266, 143 N. Y. Supp. 574; Saltzberg v. Telephone Co., 159 App. Div. 51, 144 N. Y. Supp. 309; Cumberland Telephone & Telegraph Co. v. Kelly, 160 Fed. 316, 87 C. C. A. 268, 15 Ann. Cas. 1210.

There is also grave doubt whether the statute is not limited in its application, so far as telephone companies are concerned, to the receipt and transmission of messages at public offices or pay stations, established for the transaction of business with the general public, and whether, being penal in its character, and, therefore, to be strictly construed, it can be extended to cover breaches of contract to install telephone connections in private houses or places of business of subscribers. See In re Baldwinsville Telephone Co., 24 Misc. Rep. 221, 53 N. Y. Supp. 574; Pollard v. Mo. & Kansas Telephone Co., 114 Mo. App. 533, 90 S. W. 121.

The judgment should therefore be reversed, and the complaint dismissed.